**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Case No. SACV 07-615 DOC (CTx)                                         Date: April 27, 2010

Title: JESUS ALVARADO and SANDRA M. ROTH, individually and on behalf of all others similarly situated v. U.S. BANK NATIONAL ASSOCIATION; and DOES 2 through 200, inclusive

DOCKET ENTRY
[I hereby certify that this document was served by first class mail or Government messenger service, postage prepaid, to all counsel (or parties) at their respective most recent address of record in this action on this date.]
                                       Date:_____ Deputy Clerk: _____

PRESENT:
                     THE HONORABLE DAVID O. CARTER, JUDGE

     Stephanie Mikhail                             Not Present
      Courtroom Clerk                                Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS: ATTORNEYS PRESENT FOR DEFENDANTS:

NONE PRESENT                                   NONE PRESENT

PROCEEDING (IN CHAMBERS): ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

       Before the Court is Defendant U.S. Bank National Association ("Defendant")'s Motion to Dismiss or in the alternative Motion to Strike (the "Motion"). The Court finds the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; Local R. 7-15. After considering the moving, opposing, and replying papers, the Court GRANTS IN PART AND DENIES IN PART the Motion.

     **I.**      **Background**

          **A.**      **Factual Allegations**

       This class action arises out of Defendants' alleged failure to properly disclose certain interest rate and monthly payment terms in loan documents delivered to Plaintiffs. *See* Fourth Amended Complaint (FAC) ¶ 1. Plaintiffs allege that they entered into Option Adjustable Rate Mortgages ("OARM") with Downey Savings and Loan Association, F.A. ("Downey"). *Id.* ¶ 4. On or

about November 21, 2008, Defendant U.S. Bank National Association allegedly acquired the banking operations of Downey and thereby became the successor in interest to Downey. *Id.*

The FAC alleges that Plaintiffs purchased OARM loans with the following common characteristics: (1) a monthly payment amount based upon a "teaser" interest rate ranging from 1% to 3%; (2) a payment schedule for the first 3-5 years of the note based upon a fully amortizing payment at the "teaser" interest rate; (3) the adjustment of the interest rate after one month to a rate which is the sum of the "index" and the "margin"; and (4) an increase in the amount of monthly payments after the first 3-5 years of the note. *See id.* ¶ 22. Plaintiffs allege that Defendants were aware of the potential for the "teaser" rate to escalate, such that the calculated monthly payments would no longer be sufficient to even cover the monthly interest on the loan. *Id.* ¶ 23-26 ("The Loan Documents disclosed a teaser interest rate, but they did not disclose that this rate would sharply increase after only one month. The Loan Documents disclosed a low monthly payment for the first 3-5 years of the loan, which was based on the teaser rate, but this did not reflect the actual amount of interest being charged or the amount Plaintiffs and Class Members actually owed each month.").

The FAC alleges that Defendants failed to disclose the potential for escalating interest rates and the certainty of negative amortization, which results when the interest owed on the loan exceeds the monthly payment and the loan principal continues to increase despite the borrower's ability to make monthly payments. *Id.* ¶ 29; *see also id.* ¶ 31 (alleging that loan agreements only stated that negative amortization "may" occur). Plaintiffs allege that "stiff and onerous" prepayment penalty provisions within the loan agreements further precluded them from extricating themselves from the loans. *Id.* ¶ 28.

The FAC also alleges that the OARM loans included so-called payment caps, which provided that monthly payments would not increase by more than 7.5% per year. *Id.* ¶ 30. However, in the event that the loan principal exceeded 115% of the original loan amount, the payment caps no longer applied, resulting in escalating monthly payments and the substantial certainty of foreclosure. *Id.*

Plaintiffs seek to represent two classes of individuals.

First, Plaintiffs seek to represent a "National TILA Class, which is defined to include: "All individuals in the United States of America who, between May 25, 2006 and the date that notice is mailed to the Class, obtained an Option ARM loan on their home from Downey Savings and Loan Association, F.A. that was sold or assigned to U.S. Bank National Association with the following characteristics: (i) There are two numerical interest rates listed on page one of the Promissory Note, with one of the rates being 3.0% or less; (ii) The Note uses the term "may" instead of "will or shall" change when describing an increase of the listed numerical rate . . .; (iii) The margin added to the index to calculate the interest rate for the loan is greater than the lowest numerical interest rate listed on Page 1 of the Promissory Note; (iv) The promissory note does not contain any information any statement that

paying the amount listed as the 'initial monthly payment' 'will' as opposed to 'may' result in negative amortization after the first interest rate change date. Excluded from the Class are Defendant's employees, officers, directors, agents, representatives, and their family members, as well as the Court and its officers, employees, and relatives." *Id.* ¶ 38.

Second, Plaintiffs seek to represent a putative "California Class," which is defined to include: "All individuals who, within the four-year period preceding the filing of Plaintiffs' original complaint through the date that notice is mailed to the Class, have or had an Option ARM loan originated from Downey Savings and Loan Association, F.A. and sold or assigned to U.S. Bank National Association with the following characteristics: (i) There are two numerical interest rates listed on page one of the Promissory Note, with one of the rates being 3.0% or less; (ii) The Note uses the term 'may' instead of 'will or shall' change when describing an increase of the listed numerical rate . . .; (iii) The margin added to the index to calculate the interest rate for the loan is greater than the lowest numerical interest rate listed on Page 1 of the Promissory Note; (iv) The promissory note does not contain any statement that paying the amount listed as the 'initial monthly payment' 'will' as opposed to 'may' result in negative amortization after the first interest rate change date, that: (a) was secured by real property in the United States; and (b) was originated or otherwise approved by Downey Savings and Loan Association, F.A. within the State of California. Excluded from the California Class are Defendants' employees, officers, directors, agents, representatives, and their family members, as well as the Court and its officers, employees, and relatives." *Id.*

The FAC brings three causes of action.

First, the FAC brings a cause of action under the Truth in Lending Act (TILA), 15 U.S.C. § 1601, *et seq.* predicated on five acts or omissions alleged to have been committed by Defendants: (1) failure to disclose the certainty of negative amortization; (2) establishment of a payment schedule based on a temporary "teaser" interest rate and not the annual percentage rate; (3) listing of an annual percentage rate with no relation to the monthly payment listed for the first two to five years; (4) failure to disclose that the initial interest rate listed in the Note was discounted; and (5) failure to disclose the certainty of negative amortization in the Loan Documents provided to Plaintiffs and Class Members before the entered into the Loan Documents. *Id.* ¶ 46.

Second, the FAC brings a cause of action for fraudulent omissions predicated on Defendants' alleged failure to disclose the temporary nature of the promised low interest rate, the payment rate's inability to cover both the principal and interest, the certainty of negative amortization even under the payment schedule, and the certainty of the loss of equity and/or foreclosure even under the payment schedule. *Id.* ¶ 76.

Third, the FAC brings a cause of action under California Business and Professions Code § 17200, *et seq.*, which alleges that the failure to make the enumerated disclosures with respect to the "teaser" interest rate, negative amortization, and the certain loss of equity and/or foreclosure constituted

unlawful, unfair and fraudulent business practices.  *See id.* ¶¶ 91-110.

The FAC prays for actual, compensatory, statutory, and punitive damages, rescission of Plaintiffs' individual loans, equitable relief including restitution, restitutionary disgorgement of Defendants' wrongfully obtained profits, interest, declaratory relief, injunctive relief, reasonable attorneys' fees and costs, and other just and proper relief.  *Id.* at XII.

### B.     Procedural History

This lawsuit was filed on May 25, 2007 and a first amended complaint soon followed on July 26, 2007.  The case was initially assigned to the docket of the Honorable Andrew J. Guilford.  On August 20, 2007, the since-terminated defendant Downey moved to dismiss in part the first amended complaint, and Judge Guilford took Downey's motion under submission following a motion hearing at which a tentative ruling was distributed.  On December 26, 2007, two plaintiffs – Angelica Reyes and Alfredo Reyes – were voluntarily dismissed without prejudice.  On March 29, 2008, Judge Guilford granted in part and denied in part Downey's pending motion to dismiss the first amended complaint.  More specifically, Judge Guilford dismissed with prejudice the first amended complaint's California Business and Professions Code § 17200 claims on the grounds that such claims were preempted by federal law.

On September 5, 2008, Judge Guilford granted Plaintiffs' motion for leave to file a second amended complaint, which Plaintiffs filed on September 12, 2008.  Judge Guilford granted Downey's motion to dismiss the second amended complaint on November 10, 2008.  More specifically, Judge Guilford dismissed with prejudice the second amended complaint's cause of action for fraudulent omissions on the grounds that the claim was duplicative of the previously dismissed section 17200 claim and therefore preempted by federal law.

On November 21, 2008, Plaintiffs filed a third amended complaint, which Downey moved to dismiss on December 8, 2008.  On January 8, 2009, by stipulation of the parties, the FDIC was substituted as receiver of Downey.  The proceedings were further stayed for ninety (90) days in light of the FDIC's substitution.

On March 19, 2009, this lawsuit was re-assigned to the docket of this Court due to Judge Guilford's self-recusal.  On May 7, 2009, this Court stayed this action pending the exhaustion of Plaintiffs' administrative remedies against the FDIC-Receiver.

The FDIC-Receiver was thereafter dismissed with prejudice on February 9, 2010 and Plaintiffs filed the operative FAC on February 10, 2010.

### II.    Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed when a plaintiff's allegations fail to state a claim upon which relief can be granted. Once it has adequately stated a claim, a plaintiff may support the allegations in its complaint with any set of facts consistent with those allegations. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1969 (2007); *see Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990) (stating that a complaint should be dismissed only when it lacks a "cognizable legal theory" or sufficient facts to support a cognizable legal theory). Dismissal for failure to state a claim does not require the appearance, beyond a doubt, that the plaintiff can prove "no set of facts" in support of its claim that would entitle it to relief. *Twombly*, 127 S. Ct. at 1968 (abrogating *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99 (1957)).

The Court must accept as true all factual allegations in the complaint and must draw all reasonable inferences from those allegations, construing the complaint in the light most favorable to the plaintiff. *Guerrero v. Gates*, 442 F.3d 697, 703 (9th Cir. 2006); *Balistreri*, 901 F.2d at 699. Dismissal without leave to amend is appropriate only when the Court is satisfied that the deficiencies in the complaint could not possibly be cured by amendment. *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003) (citing *Chang v. Chen*, 80 F.3d 1293, 1296 (9th Cir. 1996)); *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

Additionally, in cases where fraud is alleged, Federal Rule of Civil Procedure 9(b) requires that allegations be stated with particularity. Allegations of fraud must "state the time, place and specific content of the false representations as well as the parties to the misrepresentations." *Alan Neuman Prod., Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir. 1988) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393 (9th Cir. 1986).

In general, a court cannot consider materials outside the pleadings on a motion to dismiss for failure to state a claim. *See* Fed. R. Civ. P. 12(b). A court may, however, consider items of which it can take judicial notice without converting the motion to dismiss to one for summary judgment. *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994). A court may take judicial notice of facts "not subject to reasonable dispute" because they are either "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. Additionally, a court may take judicial notice of "'matters of public record' without converting a motion to dismiss into a motion for summary judgment." *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (quoting *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986)). Under the incorporation by reference doctrine, courts may also consider documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading." *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999) (quoting *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994)) (alteration in original). In other words, the court may consider documents "on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) and no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (citations omitted). "The

court may treat such a document as 'part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under 12(b)(6). *Id.*

### III. Discussion

#### A. Requests for Judicial Notice

Both parties submitted Requests for Judicial Notice. Facts subject to judicial notice may be considered in deciding a motion to dismiss. *Mullis v. United States Bankr. Court*, 828 F.2d 1385, 1388 (9th Cir. 1987). Under Federal Rule of Evidence 201, "[a] judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). "[T]he fact must be one that only an unreasonable person would insist on disputing." *Walker v. Woodford*, 454 F. Supp. 2d 1007, 1022 (S.D. Cal. 2006) (internal citations and quotation marks omitted).

The Court GRANTS Defendants' Request for Judicial Notice as to the following documents, attached as Exhibits A through I to Defendants' Request for Judicial Notice: (1) The Deed of Trust and accompanying riders signed by plaintiff Jesus Alvarado and collectively recorded as Doc # 2006-0467884 in the Official Records of the San Diego County Recorder's Office; (2) The Adjustable Rate Mortgage Loan Program Disclosure signed by plaintiff Jesus Alvarado and dated as of June 23, 2006; (3) a document entitled "Important Notice Regarding Your Loan" signed by plaintiff Jesus Alvarado; (4) the Deed of Trust and accompanying riders signed by plaintiff Sandra Roth and collectively recorded as Doc # 2006-0564158 in the Official Records of the Riverside County Recorder's Office; (5) the Adjustable Rate Mortgage Loan Program Disclosure signed by plaintiff Sandra Roth and dated as of July 25, 2006; (6) a document entitled "Important Notice Regarding Your Loan" signed by plaintiff Sandra Roth; (7) Judge Guilford's Order Granting in Part and Denying in Part Defendants' Motion to Dismiss in this matter; (8) Judge Guilford's Order Granting Motion to Dismiss Plaintiffs' Second Cause of Action and Motion to Strike Portions of Second Amended Complaint in this matter; and (9) a separate opinion in *Carroll et al. v. Homecomings Financial, LLC et al.*, CV 07-3775-AHS (FMOx), dated March 23, 2007, issued by Judge Alicemarie Stotler.

Plaintiffs do not dispute the authenticity and accuracy of the documents attached to Defendants' RJN. In such circumstances, other courts in the Ninth Circuit have taken judicial notice of loan documents. *See Lynch v. RKS Mortg., Inc.*, 588 F. Supp. 2d 1254, 1256 n. 2 (E.D. Cal. 2008); *Seagren v. Aurora Loan Servs., Inc.*, no. CV 09-5050 ODW (AGRx), 2009 WL 3534171, at *2 (C.D. Cal. Oct. 28, 2009); *Pineda v. GMAC Mortg. LLC*, No. CV 08-5341 AHM (PJWx), 2008 WL 5432281, at *5-6 (C.D. Cal. Dec. 29, 2008); *Johnson v. First Fed. Bank of Calif.*, No. C 08-00264 PVT, 2008 WL 682497, at *2 n. 5 (N.D. Cal. March 10, 2008). Further, a court may take judicial notice of its own files and of documents filed in other courts. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n. 6 (9th Cir. 2006). The Court therefore takes judicial notice of the documents attached as

Exhibits A through I to Defendants' RJN.

On substantially similar grounds, the Court GRANTS Plaintiffs' Request for Judicial Notice as to Exhibits B (Joint Stipulation for Leave to file Fourth Amended Complaint); C (FDIC-Receiver's Response to ex parte Application for an Order Advancing Hearing on Plaintiffs' Motions for Class Certification and Preliminary Injunction); D (Bank Acquisition Information for Downey Savings and Loan Association, F.A.) to Plaintiffs' Request. Exhibit A to Plaintiffs' request is an electronic mail exchange between counsel that bears no relation to the Court's disposition of the issues in this lawsuit and the Request for Judicial Notice is therefore DENIED as to that exhibit. The Court further GRANTS U.S. Bank's Request for Judicial Notice in Support of Supplemental Reply re Motion to Dismiss.

### B. Ownership of the Subject Loans

U.S. Bank argues that it cannot be liable for Downey's alleged misrepresentations or omissions because U.S. Bank did not originate and does not own the loans at issue. U.S. Bank's arguments are inappropriate for disposition at the pleadings stage.

U.S. Bank cites the November 21, 2008 Purchase and Assumption Agreement entered into between the FDIC-Receiver for Downey and U.S. Bank, *see* Ex. 1 to FAC, which in relevant part reads as follows: "[U.S. Bank] does not purchase, acquire or assume, or (except as otherwise expressly provided in this Agreement) obtain an option to purchase, acquire or assume under this Agreement: . . . (m) single family residence loans." *See id.* at 13-14.

But U.S. Bank concedes that it "did in fact purchase some of Downey's single family residence loans from the FDIC pursuant to a separate Loan Sale Agreement dated November 21, 2008." *See* Supplemental Reply at 2. In addition, U.S. Bank has previously claimed – *in a filing submitted to the Court* – that "U.S. Bank has appeared in this action, by filing documents . . . as the successor-in-interest to FDIC-Receiver *with respect to the loans at issue in this case*." *See* Ex. B to Pls.' RJN at 2 (emphasis added).[1] Moreover, a document disseminated over the internet by the FDIC-Receiver soon after the transfer of certain of Downey's assets to U.S. Bank states as follows: "[a]ll deposit accounts and *all loans* have been transferred to U.S. Bank." *See* Ex. D to Pls.' RJN (emphasis added).

While the Court may consider documents attached to the pleadings in deciding a Rule 12

---

[1] U.S. Bank attempts to construe this statement, which was made in a joint stipulation submitted to the Court, as merely an acknowledgment of Plaintiffs' purportedly wrongheaded allegation of ownership and not an actual admission of ownership. U.S. Bank cannot re-characterize the plain text of the stipulation. The Court appreciates the question posed by U.S. Bank in lines 26-27 on page 3 of its reply. But rhetorical questions will not win the day at the Rule 12(b) stage.

motion, the obvious ambiguities as to the scope of the loans acquired by U.S. Bank make dismissal improper. The FAC does not fail on the pleadings because it remains unclear whether U.S. Bank owns the residential loans at issue in this lawsuit.

> **B.** **TILA**

As previously mentioned, the FAC alleges that Defendants failed to disclose the certainty of negative amortization and the temporary nature of the "teaser" interest rates on the loan agreements at issue. Defendants argue that the terms of the loan agreements attached as exhibits to the FAC clearly complied with TILA's disclosure requirements.

15 U.S.C. § 1601(a) prioritizes the "informed use of credit" and the "meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit." "The courts have construed TILA as a remedial statute, interpreting it liberally for the consumer." *Riggs v. Government Employees Fin. Corp.*, 623 F.2d 68, 70-71 (9th Cir. 1980); *see also King v. California*, 784 F.2d 910, 915 (9th Cir. 1986).

A series of detailed regulations (known as "Reg Z.") implement TILA by identifying with precision the disclosure requirements that apply to lenders. In relevant part, 12 C.F.R. § 226.19 applies to certain residential mortgages and variable-rate transactions and requires the disclosure of, *inter alia*, "[a]ny rules relating to changes in the index, interest rate, payment amount, and outstanding loan balance including, for example, an explanation of interest rate or payment limitations, negative amortization, and interest rate carryover." *See* 12 C.F.R. § 226.19(b)(vii). Separately, 12 C.F.R. § 226.18 provides that in credit transactions secured by residential property for a term that exceeds one year, the lender shall disclose the annual percentage rate and, in addition, shall disclose "[t]he fact that the transaction contains a variable rate feature [and] a statement that variable-rate disclosures have been provided earlier."

U.S. Bank argues that the loan documents provided to Plaintiffs upon consummation of the loan agreements complied with TILA and Reg Z. Specifically, U.S. Bank references the adjustable rate notes's disclosure that an "interest will be charged on unpaid principal until the full amount of principal has been paid. Until the first day of the calendar month that immediately precedes the first payment date set forth . . . below, I will pay interest at a yearly rate of 7.757%. Thereafter, until the first Interest Change Date (as defined in Section 2(B) below), I will pay interest at a yearly rate of 1.750%. The interest rate I pay may change." *See* Ex. 2 to FAC, ¶ 2(A).

Plaintiffs respond that the "yearly rate" of 1.750% identified in the Note conflicts with the annual percentage rate identified in the attached Truth in Lending Disclosure Statement (TILDS), which lists the annual percentage rate – described as "the cost of your credit as a yearly rate" – at a much higher rate. *See* Ex. 2 to FAC (identifying Annual Percentage Rate as 7.859%). The TILDS

attached to the Note further provides that monthly payments shall be calculated according to the low interest rate described in the Note, even though the Note states that the low interest rate shall only apply for the first 30 days after the consummation of the loan agreement. *See id.* Plaintiffs allege that the failure to provide a consistent interest rate constitutes a violation of TILA's disclosure requirements. *See* FAC ¶ 70 (alleging that consumers "cannot make an informed decision when they cannot compare the cost of credit to other proposals. It therefore was incumbent upon Defendants to disclose to Plaintiffs and the Class members before they entered into the subject Option ARM loans the composite interest rate, and the amount of payments based thereon, so that these borrowers could understand exactly what they would be paying for the loan.").

Defendants are correct that the TILDS Statement attached to the Note discloses the APR. *See* Ex. 2 to FAC. However, Plaintiffs' quarrel is not with the disclosure of the rate that turned out to be the APR, but with the clarity of that rate. Thus, Defendants' argument in chief – that "the rate reflected in the TILDS" is an accurate representation of the APR – is inapposite. The mere fact that the rate was accurate did not make it transparent, and the fact that the monthly payment schedule identified ***in immediate proximity*** to the rate was calculated on the basis of a much lower interest rate may have resulted in impermissible confusion. Moreover, the listing of a much lower (30-day) interest rate in the Note may have also obscured to borrowers the identity of the APR, in light of the three different interest rates listed in the loan documents. The mere fact that the TILDS listed an accurate APR does not mean that Plaintiffs can prove no set of facts entitling them to relief for violations of TILA's disclosure requirements. *See Plascencia v. Lending 1st Mortg.*, No. C 07-4485 CW, 2008 WL 1902698, at *4 (N.D. Cal. April 28, 2008).[2]

The claim for improper disclosure of the discounted initial interest rate likewise states a claim upon which relief can be granted. The FAC alleges that "Defendants failed to disclose to Plaintiffs and other Class Members that the initial interest rate was discounted, and that it was absolutely certain to substantially increase after only one month, even when the index did not rise." *See* FAC ¶ 59. 12 C.F.R. § 226.17(c)(1) provides that "[t]he disclosures shall reflect the terms of the legal obligation between the parties." The Official Staff commentary to 12 C.F.R. § 226(c) states that "[i]f a loan contains a rate or payment cap that would prevent the initial rate or payment, at the time of the first

---

[2] Defendants characterize *Plascencia* as a case "alluding to the disparity between the interest rate in the note and the APR as a ***mitigating*** factor, as opposed to a contributing factor, in [borrowers'] confusion." *See* Reply at 5 (emphasis added). Defendants apparently rely on the use of the qualifier "[w]hile," which *Plascencia* used to contrast the express identification of the APR in the TILDS Statement with the failure to identify the APR or the procedures for alterations to the interest rate in the note. But Defendants do not acknowledge the remainder of the sentence at issue, in which the *Plascencia* court concluded that "Plaintiffs may be able to show that, considered as a whole, the disclosures provide confusing and and seemingly contradictory information concerning the true interest rate of the loan." *See* 2008 WL 1902698 at *4.

adjustment, from changing to the rate determined by the index or formula at consummation, the effect of that rate or payment cap should be reflected in the disclosures." Though the Note attached as Exhibit 1 to the FAC clearly discloses that the low "teaser" interest rate will expire on "the first Interest Change Date (as defined in Section 2(B) below),[3] the Disclosure Statement does not. *See* Ex. 1 to FAC. To the contrary, the Disclosure Statement only lists the APR and a schedule of payments calculated according to an unknown rate. *Id.*

And while the loan documents attached as Exhibit B to Defendants' Request for Judicial Notice disclose that "[t]he 'initial interest Rate' will not be based upon the index that will be used to make later adjustments," it may not disclose the existence of a *discounted* rate in clear and conspicuous terms. Even though the initial interest rate was certain to increase after one month, the disclosure statement represented only that "your Interest Rate may include either a discount or premium. Ask us for the amount of any discount or premium." *See* Ex. B to Defs.' RJN.[4] But 12 C.F.R. § 226(c) does not obligate a lender to make itself available to answer questions about whether a discounted interest rate exists. The regulation requires an active disclosure of the fact of a discounted interest rate. As noted by the court in *Plascencia*, a failure to inform borrowers of the certain existence of a discounted interest rate may support a claim that Plaintiffs "were not alerted in clear and conspicuous terms that the [initial] interest rate was a discounted rate." 2008 WL 1902698, at *5.

Defendants next challenge the legal sufficiency of the FAC's claim that the loan documents impermissibly failed to disclose the certainty of negative amortization. *See* FAC ¶ 51 (alleging that "Defendants were aware of the guaranteed negative amortization, because they accrued the negative amortization as income for accounting and/or tax purposes. Defendants were also aware the negative amortization was certain to occur, because, in computing the total finance charge payable over the full life of the loan for purposes of compiling the TILDS, they included the interest on 'deferred interest' which would accrue because the scheduled payments were insufficient to pay all interest due on the loan."). Specifically, Defendants argue that negative amortization was not a certainty and would not have occurred had Plaintiffs successfully paid the full monthly accrued interest.

---

[3] Section 2(B) identifies the date on which "[t]he interest rate [the borrower] will pay may change." *See* Ex 1 to FAC.

[4] Exhibit C to Defendants' RJN is a document signed by Plaintiff Alvarado entitled "Important Notice Regarding Your Loan." The document discloses that "your initial interest rate is in effect only for one (1) month. After one (1) month, the initial interest rate will increase to the 'fully indexed rate,' the index plus the margin." *See* Ex. C to Defs.' RJN. However, the "notice" is not dated, does not seem to bear any relation to the TILDS, and does not otherwise refute Plaintiffs' allegations about the loan documents' inconsistent representations as to the applicable interest rate. For example, the TILDS lists a monthly payment schedule that Plaintiffs allege relies upon the initial interest rate, even though Defendants were aware that the low interest rate was temporary.

*See* Supplemental Reply at 6. Plaintiffs respond that negative amortization was certain to occur if the borrowers followed the monthly payment schedule identified in the TILDS.

12 C.F.R. § 226.19(b) provides that in certain residential mortgage and variable-rate transactions, the borrower must disclose "[a]ny rules relating to changes in the index, interest rate, payment amount, and outstanding loan balance including, for example, an explanation of interest rate or payment limitations, negative amortization, and interest rate carryover." The parties dispute whether the regulation requires more than the disclosure that negative amortization "may" occur – as the loan documents at issue in this lawsuit indisputably do. *See, e.g.*, Ex. A to Defs.' RJN at DSL0934 (informing borrower that "THE PRINCIPAL AMOUNT TO REPAY *COULD BE* GREATER THAN THE AMOUNT ORIGINALLY BORROWED, BUT NOT MORE THAN THE LIMIT STATED IN THE NOTE.") (emphasis added); *id.* at DSL0936 (disclosing that "each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid Principal"); Ex. B to Defs.' RJN at DSL0863 (document entitled in part "POTENTIAL NEGATIVE AMORTIZATION" which provides that "Negative Amortization can also occur when the interest rate, which may change monthly after the initial fixed rate period, results in an interest due amount greater than the minimum payment amount.").

But the schedule of payments identified by the TILDS made it a certainty, not a mere possibility, that borrowers would be unable to keep up with payments on the loan, resulting in negative amortization. In such circumstances, disclosures which merely identify the potential for negative amortization are insufficient under TILA. *See O'Donnell*, 2009 WL 765670, at *10 ("Where a cap on payments that may result in negative amortization is *built into* the loan product, the customer may be said to elect the option to cap payments by selecting the loan product with the built-in caps.") (emphasis added). Defendants' authorities are unavailing. In *Carroll v. Homecomings Financial, LLC*, CV 07-3775 AHS (FMOx), Judge Stotler's Tentative Order merely noted that "[i]t is technically accurate [that negative amortization was a mere possibility] because plaintiffs could have elected a different payment option which would eliminate negative amortization." *See* Ex. I to Defs.' RJN at 61. It is unclear whether the facts in *Carroll* mirror the facts in this case, where the borrowers are alleged to have accepted a schedule of payments certain to result in negative amortization without prior warning from Downey. *See* FAC ¶ 53 ("Had Defendants disclosed to Plaintiffs and the Class members that negative amortization was certain to occur if the payment schedule in the TILDS was followed, Plaintiffs and the Class members would not have entered into the loans.").[5] Finally, Defendants' argument that TILA

---

[5] *Chetal v. American Home Mortg.*, 2009 WL 2612312 (N.D. Cal. Aug 24, 2009), which Defendants also cite, involved the denial of an application for preliminary injunction and not, as here, a motion to dismiss. In any event, the loan documents' language in *Chetal* – "[t]he principal balance on your loan can increase even though you are making the required monthly payments" – is materially distinguishable from the loan documents' language in this case – "[t]he payment amount determined at the Payment-

does not require the disclosure of negative amortization on the face of the TILDS is inapposite: the basis for Plaintiffs' allegation is not the non-disclosure of negative amortization in the TILDS, but the failure to disclose the certainty of negative amortization on *any* of the subject loan documents. *See* FAC ¶ 51.

Finally, Defendants argue that the FAC's claim that Defendants violated TILA by failing "to disclose the interest rate underlying the payment schedule" fails as a matter of law. *See* FAC ¶¶ 54-57. Plaintiffs allege that "[t]he scheduled payment amounts and interest rate listed in the Note and TILDS for each of the subject loans are unclear, because the payment amounts for the first three to five years are not based on the APR listed in the TILDS, but, instead, are based upon a rate listed in the Note that Defendants knew would exist only for thirty (30) days."

The Official Staff Commentary to 12 C.F.R. § 226.17(a)(1) states that a lender's disclosures comply with the section's requirements for clarity and conspicuousness when the disclosures are in "reasonably understandable form. For example, while the regulation requires no mathematical progression or format, the disclosures must be presented in a way that does not obscure the relationship of the terms to each other. . ." Defendants respond that section 226.18(g) only requires that a creditor disclose the "number, amounts, and timing of payments scheduled to repay the obligation." 12 C.F.R. § 226.18(g). However, it is unclear whether the monthly payment schedule – which is calculated according to a presently unknown rate – so complies. The Court is aware that in *Velazquez v. GMAC Mortg. Corp.*, 605 F. Supp. 2d 1049 (C.D. Cal. 2008) and *Conder v. Home Savings of Am.*, 2010 WL 308798 (C.D. Cal. 2010), courts dismissed claims based on improper disclosure on the grounds that the only legal obligation under the notes at issue in those cases was the minimum payments. But both cases relied on plaintiffs' failure to affirmatively plead that the schedule of payments did not reflect the minimum payments that constituted the borrowers legal obligations. The Court declines such formality; the inaccuracy of the schedule of payments, as well as alleged ambiguity of the payments owed under the Note are sufficient to sustain Plaintiffs' claim that the schedule of payments did not comply with TILA. *See O'Donnell v. Bank of America*, 2009 WL 765670, at *6 (N.D. Cal. March 20, 2009) (noting that ambiguous payment schedule, which did not accurately reflect temporary quality of initial interest rate, was sufficient for plaintiffs to "have adequately alleged a claim that the . . . payment schedules were not TILA-compliant"). The Court is not satisfied that the payments in the schedule identified the minimum payments or that minimum payments constituted the parties' legal obligations. Such a determination is ill suited for the pleadings stage.

The limited loan documents, which may not constitute the full volume of documents delivered to Plaintiffs at the time of the loans' consummation, is insufficient to demonstrate the FAC's failure to state a claim upon which relief may be granted under TILA. Accordingly, the Motion is

---

Change Date is called the "Minimum Payment." If the ***minimum*** payment amount does not pay in full the interest which is due, the unpaid interest is added to the balance of the loan." *See* Ex. B to Defs.' RJN (emphasis added).

DENIED as to the first cause of action.

### C. Causes of Action for Fraudulent Omissions and Violation of California Business and Professions Code Section 17200

The FAC's second and third causes of action for fraudulent omissions and California Business and Professions Code section 17200 are predicated on the same underlying conduct.

The second cause of action alleges that Defendants' failure to properly calculate the monthly payment schedule, as well as their failure to disclose the certainty of negative amortization, the discounting of the initial interest rate, and the applicable APR constituted fraudulent omissions. *See* FAC ¶¶ 76-77. The second cause of action further alleges that Plaintiffs were never provided with any alternative payment schedule; rather, the only payment schedule offered to Plaintiffs was the one in the TILDS, which guaranteed negative amortization. *See id.* ¶¶ 80-81. Plaintiffs allege that Defendants had knowledge of the certainty that the loan principal balance would escalate even upon full payment in compliance with the monthly payment schedule.

The third cause of action alleges that Defendants breached "the generally applicable duty of any contracting party to not omit material facts, and on the duty to refrain from unlawful, unfair and deceptive business practices." *Id.* ¶ 93. Plaintiffs allege that Defendants intentionally obscured the fact that adherence to the payment scheduled identified in the TILDS would result in negative amortization. *Id.* ¶ 96; *see also id.* ¶ 97 (alleging that "Defendants could have easily disclosed, and should have accurately and clearly disclosed, that if borrowers paid the remaining payments listed on the TILDS they would in fact be paying 115% of the balance of the original financed amount, rather than merely the balance of the original amount financed."). The predicate acts for the section 17200 violations include the aforementioned violations of TILA and, in addition, unfair and fraudulent business acts within the meaning of section 17200. *Id.* ¶¶ 100-109.

Judge Guilford already addressed the sufficiency of most of these allegations in his Order Granting in Part and Denying in Part Defendants' Motion to Dismiss (Docket 32). The Court re-iterates Judge Guilford's conclusion that the Home Owners' Loan Act (HOLA) preempts section 17200 claims predicated on alleged violations of TILA, even though TILA is a federal statute:

> As discussed, in *Silvas v. E*Trade Mortgage Corp.* the Southern District of California explicitly held that HOLA preempted claims under the UCL if the UCL claims were predicated on TILA. *E*Trade*, 421 F. Supp. 2d 1315. The court reasoned that "when federal law preempts a field, it does not leave room for the states to supplement it." *Id.* at 1319 (citing *Rice v. Santa Fe Elev. Corp.*, 331 U.S. 218, 230 (1947)). States may not avoid preemption by adopting federal laws and adding supplemental remedies. *See Public Util. Dist. No. 1 of Grays Harbor Cty. Wash. v. IDACOR, Inc.*,

>379 F.3d 641, 648-49 (9th Cir. 2004). . . . Plaintiffs' use of the UCL as predicated on TILA is preempted.

*See* Docket 32 at 9.

Defendants also argue that the section 17200 allegations predicated on violations of California Civil Code §§ 1572, 1573, and 1710 are preempted, as the allegations concern the disclosure of information in the loan agreements at issue and certain material misrepresentations made in the loan documents. 12 C.F.R § 560.2 provides that the following types of state laws are preempted: "[t]he terms of credit, including amortization, deferral and capitalization of interest, and adjustments to the interest rate, balance, payments due, or term to maturity of the loan, including loan calls [and] [d]isclosure and advertising, including statements, information, or other content required in credit application forms, solicitations, billing statements, contracts, or other credit-related documents, or requirements to supply copies of credit reports."

Though the FAC alleges that Defendants fraudulently induced Plaintiffs to enter into the loan transactions at issue, the gravamen for the 17200 claim are the purported material omissions. These omissions relate to the certainty of negative amortization, the terms of the interest rates on the loan, and the accuracy of the payment schedule identified in the TILDS. All such claims are preempted by OTS regulation, as they concern disclosures in the credit contracts.[6]

In addition, Plaintiffs' claim for fraudulent omissions, which was previously dismissed without leave to amend by Judge Guilford, is also preempted as it concerns disclosures that fall squarely within the ambit of the OTS regulation. *See Conder*, 2010 WL 308798 at *5.

For the foregoing reasons, the Motion is GRANTED WITH PREJUDICE as to the FAC's second and third causes of action, on the grounds that both causes of action are preempted in their entirety by HOLA.

### D. Motion to Strike

Defendants move to strike Plaintiffs' allegations and prayer concerning rescission and

---

[6] Plaintiffs' responsive authorities are inapposite, since the key allegation in those cases (unlike here) was not the non-disclosure of certain information in loan documents. *See Mandrigues v. World Savings, Inc.*, 2008 WL 1701948, at *3 (N.D. Cal. April 9, 2008) (holding that claims of general application as to business practices are not preempted). Plaintiffs do not allege that any action extrinsic to the disclosures themselves constituted the basis for the section 17200 claim or the fraudulent omissions claim. The Court further declines to find the OTS regulations unlawful, as Plaintiffs' urge in their Opposition.

punitive damages. *See* FAC at 24-26, 28-29,:27, 34:15-16. Specifically, Defendants argue that Plaintiffs have failed to allege tender, which is a prerequisite to a right to rescind.

Under Rule 12(f), the "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." A motion to strike may be used to strike the prayer for relief where such prayer is insufficient. *See Bureerong v. Uvawas*, 922 F. Supp. 1450, 1479 n. 34 (C.D. Cal. 1996).

The Court disagrees that the rule of tender under 15 U.S.C. § 1635(b) requires the borrower to tender the full amount owed under the loan, where the underlying allegation concerns the non-disclosure of information which resulted in a distortion of the loan amount. To require tender in such a circumstance would eviscerate the very basis for TILA's disclosure requirements.

The Court nevertheless agrees with the basic principle of tender, which is to ensure that the plaintiff can "repay the loan proceeds before going through the empty (and expensive) exercise of a trial on the merits." *Garcia v. Wachovia Mortg. Corp.*, 2009 WL 3837621, at *4 (C.D. Cal. 2009); *see Yamamoto v. Bank of New York*, 329 F.3d 1167, 1172-73 (9th Cir. 2003) ("Thus, a court may impose conditions on rescission that assure that the borrower meets her obligations once the creditor has performed its obligations."). The tender requirements, if any, may be fashioned with a view to equitable concerns. *See* 4 Miller & Starr, *Cal. Real Estate*, § 10.212 (3d ed. 2009) ("Also, a tender may not be required where it would be inequitable to impose this condition.").

At the very core of Plaintiffs' allegations lies the imposition of negative amortization, the alleged certainty of which was not disclosed to Plaintiffs at the time they entered into the loan agreements at issue. This negative amortization resulted in the escalation of the principal on the loan, as rising interest rates resulted in unpaid interest that was added to the loan principal. Plaintiffs allege that they would not have entered into the loan agreements had they known about the certainty of negative amortization. It therefore makes little sense to require Plaintiffs to allege the ability to tender the unpaid balance on the loans, when Plaintiffs contest the very amount of that unpaid balance.

What is more consistent with the purpose of the tender rule is the requirement that Plaintiffs allege the ability to tender the amount due under the loan, had the interest rate never escalated from the "initial interest rate," which Plaintiffs allegedly expected to apply even after the first thirty (30) days. The FAC includes no such allegation. Accordingly, the Court GRANTS with leave to amend the Motion to Strike with respect to Plaintiffs' claims for rescission. Plaintiffs shall amend the FAC to allege their ability to tender the amounts that would have been due under the loan had the initial interest rates listed in the Notes remained in effect after the first thirty (30) days of the loan agreements was entered into between Plaintiffs and Downey.

Defendants also move to strike Plaintiffs' prayer for relief as to punitive damages. *See* FAC ¶ 88. Punitive damages are unavailable under TILA. *See Pelayo v. Home Capital Funding*, No.

08-CV-2030, 2009 U.S. Dist. LEXIS 44453, *25 (S.D. Cal. May 22, 2009); *Bledea v. Indymac Federal Bank*, 2010 WL 715255, at * 13 (E.D. Cal. Feb. 25, 2010). Plaintiffs non-TILA claims have been dismissed with prejudice. Accordingly, the Court GRANTS the Motion to Strike as to Plaintiffs' punitive damages claims.

**IV.    Disposition**

For the foregoing reasons, the Court hereby ORDERS as follows:

1. The Motion is DENIED as to the FAC's first cause of action arising under TILA;

2. The Motion is GRANTED WITH PREJUDICE as to the FAC's second and third causes of action on the grounds that both causes of action are preempted by HOLA;

3. The Motion to Strike is GRANTED WITH LEAVE TO AMEND as to the FAC's rescission allegations and prayer for relief. Plaintiffs shall file an amended pleading in compliance with the terms of this Order within ten (10) days of the filing of this Order;

4. The Motion to Strike is GRANTED as to the FAC's prayer for relief for punitive damages.

The Clerk shall serve this minute order on all parties to the action.